Patricia Meryl GATENBY and Percy Evans, Administrators of the Estate of Ian Alexander Gatenby, Deceased,

and

May Thora Mole, Executrix of the Estate of John Henry Mole, Deceased, Plaintiffs,

v.

ALTOONA AVIATION CORPORATION

and

Paul Peterson, Defendants.

Civ. A. No. 64-1074.

United States District Court
W. D. Pennsylvania.

Oct. 21, 1966.

---◆---

David Rein, Washington, D. C., Hymen Schlesinger, Pittsburgh, Pa., for plaintiffs.

Burns, Manley & Little, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, District Judge.

Gatenby and Mole, plaintiffs' decedents, were British citizens, residents of England, employees of the British Admiralty, visiting the United States on behalf of their employer in connection with the joint activity of the British Government and the Government of the United States. The British Embassy in Washington, D. C. placed a telephone order to defendant, Altoona Aviation Corporation, a Pennsylvania corporation, operating a licensed air taxi service, whose sole place of business is at Altoona, Pennsylvania. The corporation dispatched an airplane to the Washington National Airport in Virginia, where it picked up Gatenby and Mole to transport them to University Park, Pennsylvania. The plane crashed on its approach to the landing field in Pennsylvania and Gatenby and Mole were killed. The beneficiaries of the Wrongful Death Action are residents of England, and the parties plaintiff are the administrators and executrix of the estates of the decedents appointed by the English court.

The present action was filed in the United States District Court for the Western District of Pennsylvania by the English administrators and executrix against the defendant Pennsylvania corporation, and the individual defendant who is a resident of Pennsylvania. The claims are made under the Wrongful Death Act, 12 P.S. § 1601, and the Survival Act, 20 P.S. § 320.601 of the Commonwealth of Pennsylvania.

At the pretrial conference held before the undersigned the parties requested a pretrial ruling by the Court on the law of the measure of damages to be applied in the trial of the action. Such a preliminary ruling establishing the law of the case is necessary in order that the parties may properly prepare for the trial and the presentation of evidence as to damages.

The conflict of laws rule to be applied by the Federal Court sitting in Pennsylvania in a diversity action must conform to those prevailing in Pennsylvania's state courts. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v. Stentnor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

It is the defendants' contention that the conflict of laws rule of Pennsylvania require the application of English law in the determination of the measure of damages under Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). In that decision, the Pennsylvania Supreme Court abandoned the strict application of the *lex loci delicti* rule, which it had followed up to the year before in Vant v. Gish, 412 Pa. 359, 194 A.2d 522 (1963), and joined the jurisdictions following Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963). This is also the proposed view of Tentative Draft No. 9 of Restatement 2d, Conflict of Laws, Chapter 9 (1964). It is now the law of Pennsylvania that the *lex loci delicti* rule with respect to the measure of damages is no longer an absolute and controlling rule and is replaced by a more flexible rule which permits analysis of the policies and interest underlying the particular issue before the court. While *Griffith* was brought as an assumpsit action for negligent breach of contract of carriage, attempting to avoid the Colorado limitation on damages in tort actions, the court found that the true nature of the action was in negligence. The present action rests solely on allegations of negligence. In *Griffith*, the court found that the decedent, a resident of Pennsylvania, made his contract of transportation in Pennsylvania with United Air Lines, a corporation doing

business in Pennsylvania, to be transported to Arizona, and that he was killed by a crash in Colorado while enroute to his destination. The contact with Colorado was purely fortuitous, nevertheless the laws of Colorado imposed a limitation of damages in such an action which did not prevail in Pennsylvania. In analyzing the policies behind the rules, the court found that the state in which the injury occurred, as such, has relatively little interest in the measure of damages to be recovered in such a case, whereas the interest of Pennsylvania was great. The Pennsylvania Supreme Court, therefore, abandoned the rule that the law of the place of the tort should control the measure of damages in favor of a more flexible rule of applying the rule of the place most intimately concerned with the outcome of the particular litigation. Defendants urge that the rule of damages under English law should, therefore, control in this case as being the law of the place with the most significant contacts.

> "The courts will assume that a case is to be governed by the laws of the forum unless it is expressly shown that a different law applies, and in case of doubt as to whether the lex loci or the lex fori should govern, the court will naturally prefer the laws of its own state or country." 16 Am.Jur.2d, Conflict of Laws § 11.

See also The Scotland, 105 U.S. 24, 26 L.Ed. 1001 (1881), Smith v. New York Life Insurance Co., 208 F.Supp. 240 (D.C.Iowa, 1962).

Our first inquiry leads to an investigation of the applicable English law with respect to damages to determine whether a real conflict of laws problem exists. It appears that under English law two causes of action exist by statute for injuries causing death, the Fatal Accidents Act, (7 & 8 Eliz. 2, c. 65) providing an action for damages for the benefit of certain designated beneficiaries for the purpose of reimbursing them for the pecuniary loss suffered by reason of the death, and an action on behalf of the estate of the decedent under the Law Reform Act, (24 & 25 Geo. 5 c. 41). These statutory actions are very similar to those provided by the laws of Pennsylvania under the Wrongful Death Act and the Survival Act.

■ An examination of the commentaries and the appellate cases under the English Acts reveals that the damages awarded are intended to compensate for the pecuniary loss suffered by these designated beneficiaries and the estate of the decedent in much the same manner as the standards applied under the Pennsylvania statutes. We have no clear indication of the standards of evidence by which such damages are established since under the English practice cases are not tried before juries and, therefore, the appellate cases do not discuss the instructions which are given to the jury on the measure of damages. Nevertheless, a review of the cases in England and the text material reveals that the factors considered are the age and health of the decedent, his earning power, the number of his dependents, and such other factors as we commonly permit into evidence in Pennsylvania in determining pecuniary loss. That such damages are reduced to present worth in England by the trial judge is established by the reference of the courts to the term "years' purchase of the basic figure." The English courts do apparently pay some regard to the uncertainties of the future. A factor sometimes considered is the prospect of remarriage of a dependent widow. This is an element which must not be considered by a jury in the Pennsylvania courts, Curnow v. West View Park Co., 220 F.Supp. 367 at p. 373 (W.D.Pa.1963), reversed on other grounds 337 F.2d 241 (1964), but we have little doubt that a jury is unmindful of the prospects of a young and attractive widow, or uninfluenced by the fact that decedent's widow has already remarried by the time the litigation has reached the trial stage. We do not feel that this difference in the measure of damages to be applied is of practical significance.

Another difference between the standard of damages applied in the English courts and the Pennsylvania courts is the taxation of costs including counsel fees of the successful party against the unsuccessful party. While the contingent fee arrangement is unknown or highly unusual in England, it is an almost standard practice in personal injury and accidental death litigation in Pennsylvania. If we were to conclude that the law of England were to apply to the measure of damages we would face the additional problem of determining the plaintiffs' right to have counsel fees taxed as part of the costs as being within the measure of damages allowed by the law of England.

▮ However, the court does not find any substantial conflict of laws problem to exist in this case. Except for the taxation of counsel fees as costs, the measure of damages under English law is substantially the same as that applied by the Pennsylvania courts. In any event, while the law which creates the right of action determines what items of loss are to be included in the damages, the procedural law of the forum determines the procedures by which the assessment is made, and the admissibility of evidence.

> "The law of the forum governs all matters of pleading and the conduct of proceedings in Court." Restatement, Conflicts of Laws § 592.

See also Restatement, Conflict of Laws § 412, Comment (a); 16 Am.Jur.2d, Conflict of Laws § 76; Norwood v. Great American Indemnity Co., 146 F.2d 797 (3rd Cir., 1944).

▮ The evidence in support of the measure of damages is thus to be determined by the law of the forum under Rule 43(a) of the Federal Rules of Civil Procedure.

▮ As to the substantive law, applying the rule of the Pennsylvania cases as set forth in Griffith v. United Air Lines, Inc., cit. supra, and McSwain v. McSwain, 420 Pa. 86, 215 A.2d 674 (1966), we feel that the application of the Pennsylvania law as to the measure of damages best meets the balancing of interests test. The sum of Pennsylvania contacts is larger in number and importance than contacts of any other place. See Restatement 2d, Conflict of Laws § 379(2), Tent. Draft No. 9 (1964). The accident happened in Pennsylvania, the alleged negligent conduct occurred in Pennsylvania, the relationship between the parties is centered in Pennsylvania, the defendants are a Pennsylvania corporation and a Pennsylvania individual, and the trial is being held before a Federal court sitting in Pennsylvania. It is not entirely fortuitous that the accident occurred in Pennsylvania, since Pennsylvania was the point of departure and intended termination of the flight in question, and the destination of the decedents.

> "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern." Restatement 2d, Conflict of Laws § 379(3) Tent. Draft No. 9, (1964).

The English contacts are solely the domicile of the decedents and their personal representatives, and the domicile of the statutory beneficiaries.

While *Griffith* abandoned the strict application of the *lex loci delicti* rule in Pennsylvania, it did not bar the application of Pennsylvania local law, or the local law of any forum to a cause of action arising within its jurisdiction, even though the cause of action had contacts with other jurisdictions. We believe that in most causes of action grounded on tortious conduct, the place of the alleged negligent conduct will be the point of its most significant contact. A compelling reason may cause it to shift its center of interest, as in *Griffith*. But under the facts of the present case we are of the opinion that the Supreme Court of Pennsylvania would conclude

that the most significant contacts in this case center in Pennsylvania, and that the rights and duties of the parties, including the measure of damages, are to be determined by the law of Pennsylvania.

Furthermore, we find that the application of the law of Pennsylvania with respect to the measure of damages under the Wrongful Death Act and the Survival Act accommodates the law of England as well as the law of Pennsylvania. No essential policy of English substantive law as to damages is violated by the application of the Pennsylvania standards and no conflicts of law doctrine of Pennsylvania law is ignored by applying the Pennsylvania measure of damages.

We, therefore, conclude that the law of Pennsylvania as to the measure of damages under the Pennsylvania Wrongful Death Act and the Pennsylvania Survival Act, and the evidence admissible thereunder, shall be controlling in this case.