Patricia Meryl **GATENBY** and Percy Evans, Administrators of the Estate of Ian Alexander Gatenby, Deceased, and May Thoro Mole, Executrix of the Estate of John Henry Mole, Deceased, Plaintiffs,

v.

**ALTOONA AVIATION CORPORATION** and Paul Peterson, Defendants.

Civ. A. No. 64–1074.

United States District Court W. D. Pennsylvania.

Jan. 9, 1968.

Hymen Schlesinger, Pittsburgh, Pa., David Rein, Washington, D. C., for plaintiffs.

Burns, Manley & Little, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, District Judge.

In prior stages in this action we have determined that Pennsylvania law governs [259 F.Supp. 573, W.D.Pa.1966] and that defendant Altoona Aviation Corporation was liable for damages as a matter of law. [268 F.Supp. 599, W.D. Pa.1967].

This diversity death action was submitted to the jury on two issues; the vicarious liability of defendant Peterson arising from his relationship to the pilot and his transactions with defendant corporation; and the issue of damages. The jury found Peterson not liable and awarded damages to plaintiff. Both parties have moved for a new trial.

We believe that the jury's finding that Peterson was not individually liable is supported by the evidence and is in accord with controlling law. Cf. Zubic et al. v. Zubic, Inc., 384 F.2d 267 [3rd Cir., 1967].

Defendant's motion is directed mostly at the evidence and the court's charge on the subject of wrongful death damages. The evidence in support of wrongful death and survival act damages was produced by the widows of the two decedents, an administrative officer for personnel matters in the British civil service familiar with the service grades and pay scales of decedents' service, and from a retired official of the higher civil service in Britain. This evidence was all used by an actuary to compute lifetime earning power, to deduct cost of maintenance, to exchange pounds into dollars, and to reduce future payments to present worth. The actuary made calculations based on four different assumptions. These calculations were displayed in four photostatic enlargements displayed before the jury during his testimony, but the exhibits were not sent out with the jury. The court was largely guided by Brodie v. Phila. Trans. Co., 415 Pa. 296, 203 A.2d 657 [1964], where the actuarial expert performed the same calculations on a blackboard before the jury. We avoided the error noted in *Brodie,* supra, because the actuary made all calculations beforehand using 6% simple interest, as held by that case to be the Pennsylvania rule.

While the jury heard the actuary's testimony and saw the results of his calculations, these documents were not sent out with the jury during its deliberations to avoid any undue emphasis being given to this printed testimony.

The court also believes that it was careful to include in its instructions all of the warnings and cautions called to our attention in *Brodie* and the other Pennsylvania cases dealing with the use of life expectancy tables. The Court explained the function of the expert witness not only in its final charge, but in a cautionary statement that accompanied the introduction of the expert testimony.

██ Defendant complains that the court's charge and comments on the evidence placed undue emphasis upon the actuary's testimony. Because his was the principal testimony and because it involved several matters of prime importance in the case it was necessary to deal with it at length. Federal district judges are not only permitted to comment upon evidence, they are specifically advised to do so. Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 [1933].

██ Our re-examination of the transcript of the testimony and the charge convinces us that the jury had adequate instructions on the elements of damages. We find no harm in our reference to the

actuary's calculations as illustrative of the process of reducing future payments to present worth. This is always a difficult problem for jurors, and to the extent that the actuary's calculations, the mathematical accuracy of which was not contested, aided the jury more than the dry recital of the applicable law by the court in its charge, we believe that they were beneficial. "Concrete illustrations may be used by the trial judge in explaining present worth." Littman v. Bell Telephone Company, 315 Pa. 370, 377, 172 A. 687, 690 [1934]. See also Murray v. Philadelphia T. C., 359 Pa. 69, 75, 58 A.2d 323 [1948].

The jury was repeatedly reminded that the validity of the actuary's assumptions was a matter for their determination, as was the acceptance of evidence from the life expectancy tables.

 Objection was made to the admission into evidence of the fixed pension rights of decedents based upon past service, to the opinion as to probability of promotions within the permanent civil service, the probabilities of increases in the salary scale based on past experience, and on the probability of post-retirement employment. We believe that such matters are proper for consideration of the jury in a death action.

"Pecuniary loss is the destruction of a reasonable expectation of pecuniary advantage from the deceased. It is not a matter of guess or conjecture, but must be based upon facts showing the contributions which the deceased made during his lifetime and facts upon which the jury can base an estimate of the probable contributions which he would have made for the balance of his natural life." Cromley v. Speich, 19 F.Supp. 857 [M.D.Pa. 1937]; aff'd 94 F.2d 543 [3rd Cir., 1938].

See also Gaydos v. Domabyl, 301 Pa. 523, 152 A. 549 [1930]; Dubrock v. Interstate Motor Freight System, 143 F.2d 304 [3rd Cir., 1944].

"But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances 'juries are allowed to act upon probable and inferential as well as direct and positive proof.'" Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652 [1946].

In the instant case the witnesses familiar with the character of decedents' service and the nature of their abilities testified to their opinion of the probabilities of continued advancement. Everything in the evidence concerning the highly trained technical background of both decedents pointed to the most favorable inferences of continued advancement.

 Finally it is objected that the verdict is excessive as to both decedents. Having in mind that we were dealing with the lives of two highly trained experts, with permanent civil service status, of high likelihood of further promotion and of continued earning power after retirement, each with children who are expected to receive university educations, we do not find the verdicts excessive, or beyond a reasonable relationship to the injury sustained or the loss suffered by the plaintiffs. Cf. DeVito v. United Air Lines, 98 F.Supp. 88 [E.D.N.Y.1951], applying Pennsylvania law, and First National Bank of Meadville, Pa., v. Niagara Therapy Manufacturing Co., 229 F.Supp. 460, 466 [W.D.Pa.1964].

Under these considerations total awards under the Wrongful Death Act and the Survival Act in the amounts of $195,000 for the thirty-seven year old victim, and $135,000 for the forty-eight year old victim, are not unsupported by evidence and are not excessive. They are well within the mathematical computations which may be made on the bases of relevant evidentiary factors.

## ORDER

The motion of plaintiffs for judgment N.O.V. or in the alternative for a new trial and the defendant's motion for a new trial are denied.