Richard A. CHENOWETH, Executor of
the Estate of Reid B. Babcox, Sr.,
Deceased, Plaintiff,

v.

John T. SCHAAF, M.D., Hamot Medical
Center, and George Bandow,
M.D., Defendants.

Civ. A. No. 82–205 Erie.

United States District Court,
W.D. Pennsylvania.

Jan. 9, 1984.

Mark Ruska, Pittsburgh, Pa., for plaintiff.

T. Warren Jones, Erie, Pa., for Hamot Hosp.

Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, Pa., for Dr. John T. Schaaf.

Ronald Heck & Associates, Pittsburgh, Pa., for George Bandow, M.D.

PRETRIAL ORDER IN LIMINE ON
PROOF OF DAMAGES

WEBER, District Judge.

While we have had two occasions to publish opinions on damages arising from the Pennsylvania Wrongful Death Act and the Survival Act, we face trial decisions on the

admissibility of evidence on these questions more frequently. The views expressed in *Gatenby v. Altoona Aviation,* 277 F.Supp. 1011 (W.D.Pa.1968), and *Krakar v. Don Swart Trucking, Inc.,* 323 F.Supp. 157 (W.D.Pa.1971) appear to remain sound despite the passing years and will control in the present action.

However, a warning is given to counsel who cite our prior decisions with careless rapture because they are prior decisions of the trial court. The specific facts of each case are highly important in determining the results. In *Gatenby* we had combined causes of action under the Wrongful Death Act and the Survival Act. The main thrust of the evidence in *Gatenby* was the damages to two dependent widows and dependent minor children under the Wrongful Death Act from the death of two husbands and fathers who were in the midst of careers offering future advancement, early retirement and pension rights, and a high expectation of substantial earnings after early civil service retirement. The admitted evidence of future earning power was also relevant to damages under the Survival Act.

In *Krakar* the situation was different as to both facts and the action was solely for damages under the Survival Act. There the decedents were a 74 year old retired pensioner and his 61 year old wife, still employed but anticipating retirement and pension. There we held pension and social security benefits admissible to be considered with other factors in the calculation of pecuniary loss. One factor leading to this conclusion is that such income is a substitute for earning power because the receipt of retirement benefits and/or social security benefits represents an option between continuing work and accepting retirement income.

We now turn to the facts at hand in the present case to determine the admissibility of certain evidence relating to damages in a case brought under both the Wrongful Death Act and a Survival Act cause of action.

Plaintiff's decedent was 70 years of age at the time of his death in September 1981. During his working years he was employed by Babcox Publications and two related corporations as Executive Vice-President of each, a business founded by his father and carried on by himself and his brother. On March 12, 1979, he entered into three practically identical contracts with the three corporations, each signed by T.B. Babcox as the President of each corporation, and by decedent and his wife. The contracts recited his experience and knowledge of the affairs of the company and his contacts in the industry. Each recited prior employment contracts under which he was to receive deferred compensation and death and disability benefits after his retirement. The contracts provided that after his retirement he would continue to hold himself available to render consultative, advisory and appropriate special services; that he not be required to devote the major part of his time to such services, nor to be available at reasonable vacation periods, nor during periods of any illness, disability or incapacity. The contract also contained by decedent and his wife an agreement not to compete, or be employed by any competitor. Decedent and his wife agreed that these contracts replaced and abrogated all prior contracts under which he held pension rights, and disability and death benefits. Decedent was to be paid $107,000 per year under these contracts, in monthly installments. The contracts covered a period of ten years, and in the event of his death the payments would continue to be made to his wife, if living, or to his lineal descendants. The nature of the contracts is revealed by the provision for tax treatment. The employer is to deduct these payments as expenses on its books and decedent and his wife will report the payments as compensation. This follows the standard forms suggested in certain tax advice texts which show how the purchaser of a business interest can deduct his capital investment as an expense and the seller can reduce or spread out the tax on the capital gain of a sale. The agreements are obviously a part of a transaction on the sale of a business interest.

The present question raised by plaintiff at the pretrial conference and subsequently briefed by the parties is, as stated by plaintiff's brief:

The plaintiff's decedent's contract with his employer is admissible to prove his earnings capacity, however its post mortem provisions constitute supplemental retirement benefits, and are therefore inadmissible pursuant to the collateral source rule.

The trouble with this is the same problem referred to in the old World War I song:

How're you gonna keep them down on the farm, After they've seen Paree?

Plaintiff's counsel wants to tell the jury that decedent was receiving $107,000 per year at the time of his death, but doesn't want them to hear that his wife or other dependent beneficiaries did not lose that income by reason of his death. Because of the rule that Wrongful Death Act damages are calculated on the basis of the economic loss suffered by the statutory beneficiaries, showing such provisions would demonstrate that decedent's death was not an economic loss, but rather an economic benefit because the cost of decedent's own maintenance would not have to be deducted.

■ Plaintiff's argument must be treated in two parts. First: is the income from these contracts proper evidence of earning power? We think not.

While in *Krakar,* supra, we admitted evidence of social security and pension benefits, we noted at 323 F.Supp. p. 159:

These rulings are limited to such pension income as terminates upon death and has no application to income from capital investments because this is not related to earning capacity and the income producing capital is not destroyed by death. *Sherin v. Dushac,* 404 Pa. 496, 172 A.2d 577 (1961).

The payments under the contracts are obviously part of a general estate plan where decedent's interests in business enterprises were sold to the business enterprise in return for a ten year annuity in a guaranteed sum, not dependent on his continued life. Although they contain clauses drafted to afford tax protection to both parties, this is their essential nature, and the payments are not evidence of decedent's earning power at the time of his death.

The second issue raised by plaintiff is that mention of the post mortem treatment of decedent's income is barred by the "collateral source rule" in Pennsylvania. The writer of this opinion believes that he learned all that he ever needed to know about the Pennsylvania "collateral source rule" in the first year he sat on the bench from the encyclopedic opinion of Chief Judge Biggs in *Feeley v. United States,* 337 F.2d 924 (3d Cir.1964). In a nutshell (if I may dare to employ that expression in connection with *Feeley*) the doctrine says that the defendant reaps no benefit from the fact that plaintiff's damages have been paid in whole or in part from another source than defendant. It's easy to put a rule into a nutshell but the whole science of jurisprudence is devoted to releasing rules from nutshells.

■ The "collateral source rule" enables a plaintiff to reap a double recovery in certain circumstances:

(a) Where plaintiff must reimburse the collateral source of the payment, i.e., where the source may enforce its right of subrogation against the plaintiff, as in Workmen's Compensation, health and accident insurance, V.A. hospitalization and the like, or

(b) Where the plaintiff himself is the source of the collateral payments, as where he buys a separate accident or medical benefit policy for himself which pays regardless of any other insurance (see the Sunday advertising supplements of the T.V. ads); or

(c) Where the collateral payment is a gratuity, as where the kindly employer continues to pay wages during an employee's disability where he is not required to do so by the employment contract, or where a grateful government has supplied certain benefits because of wartime military service. *See: Feeley,* supra, at p. 928.

■ In the present case the annuity contracts contain no subrogation rights.

In the *Gatenby,* supra, where both the Wrongful Death Action and the Survival Action were tried together, we allowed evidence of pension rights and prospective future earnings because income from those sources was income upon which the statutory beneficiaries depended.

However, plaintiff's decedent did bargain for these benefits for himself or his surviving wife or descendants. In that sense the benefits are collateral. We have previously held them to be inadmissible as evidence of decedent's earning power in the Survival Act cause of action. They show no loss to decedent's beneficiaries under the Wrongful Death Act and the court can see no reason for their introduction in the damages portion of plaintiff's Wrongful Death Act case. If, for any reason, the plaintiff should bring them to the attention of the jury, the door has been opened, and thus the defendant may bring them to the attention of the jury to rebut any inference of loss.

As to the benefits being barred because they are gifts to decedent or his beneficiaries, the evidence shows that they were bargained and contracted for, and thus not excluded.

Plaintiff and defendants have argued the application of punitive damages. This is not a question that can be determined before trial. It depends on the nature of the evidence of liability to be introduced at trial. The issue will be submitted to the jury in the damages portion of the trial in the Survival action if the liability evidence warrants it and counsel will be afforded the opportunity to submit points for charge and argue them before the submission of the damages issue to the jury.

The above rulings will govern the trial in this action.