**Dominic SIRIANNI, Plaintiff,**

**v.**

**GENERAL MOTORS CORPORATION and Avis Rent A Car Systems, Inc., Defendants.**

**Civ. A. No. 67–514.**

United States District Court, W. D. Pennsylvania.

March 17, 1971.

See also, D. C., 313 F.Supp. 1176.

Leo J. Kelly and John C. Hanna, Pittsburgh, Pa., for plaintiff.

Carl A. Eck, Pittsburgh, Pa., for defendants.

OPINION

WEBER, District Judge.

In this diversity negligence case the plaintiff was awarded damages of $125,000 for his injuries principally involving a permanent deformity of the right hip which leaves his right leg 1 to 2 inches shorter than the left leg. We do not minimize the seriousness of his injury and the complications that developed therefrom by our brevity of description. Undisputed medical expenses of over $20,000, extended periods of hospitalization, several surgical procedures, and a long period of attempted physical rehabilitation were described at great length during the trial.

While defendants admitted liability for the accident and the damages proxi-

mately caused by it, they denied liability for the consequences of an intervening episode which seriously aggravated plaintiff's condition, prolonged his recovery and contributed to the permanent disability which he claims.

This incident involves a fall from a bicycle two years after the initial accident, resulting in a fracture of the condyle region of the right femur. While this undisplaced fracture healed, plaintiff later developed difficulties in the right knee in this region, leading to the removal of his right knee cap.

A great deal of testimony was devoted to the plaintiff's difficulties with the knee joint, its relation to his original injuries and its relation to the subsequent fall from the bicycle.

The plaintiff's position was that the fall from the bicycle was causally related to the original accident because plaintiff had been advised to ride the bicycle by his physician as a form of exercise therapy and that he fell and fractured the femur because he was unable to support himself on his injured right leg, a condition for which defendants would be responsible under their admission of liability for the original accident.

Defendants asserted that the fracture of the femur from the bicycle fall, and all of its consequences, are causally unrelated to the first injury. They produced evidence to support their contention that the fall from the bicycle was caused by a sudden stop to avoid a collision, and the skidding of the bicycle wheel on loose gravel, leading to a fall and fracture not caused by the weakness of plaintiff's right leg.

The Court devoted three pages of the transcribed charge to an explanation of the contentions of the parties with regard to the effect of the subsequent injury, and the duty of the jury with regard to them. We specifically called the jury's attention to the testimony of a medical witness, Dr. Temeles, where he explained clearly the distinction which he drew in his opinion as to causal relation between the original injury and the fall from the bicycle. We did not adopt the language of a charge on this point submitted by plaintiff, but we believe that the point was fully and adequately covered in the charge. The plaintiff disputes this. In any event, we cannot tell whether or not the charge as given had any adverse effect. The jury could well have found the consequences of this accident causally related to the first accident and have included the aggregation of damages claimed in its verdict. The verdict is large enough to cover this, in view of other contested issues of damages presented.

Plaintiff presented an expert witness to forecast, compute, and reduce to present worth damages due to loss of income to date of trial and impairment of future earning power. These computations were based on many assumptions, some of which the jury may have determined adversely to the plaintiff, and one assumption not supported by the evidence, that plaintiff's future earning power was totally impaired. Plaintiff's evidence, at best, tended to show that plaintiff could never return to his former occupation of heavy truck driver, and thus would be deprived of all income and the pension rights which that employment might produce. Defendants' evidence contested this contention, and also contested the extent of the claimed loss for past earnings on the grounds that but for intervening and unrelated events, plaintiff's earning power would have been more quickly restored. This was a jury question, and extensive evidence was produced on both sides.

■ While the plaintiff's forecasts of impairment of future earning power were based on the assumption of total impairment of all earning power, an assumption not supported by the evidence, plaintiff now apparently argues that his evidence of the actuarial forecast of possible future earnings under total disability shifted the burden to defendants of establishing the extent of such earning power as it claimed the plaintiff might possess. This is not the law.

"Loss of earning power *and its amount* must appear by proper and satisfactory proof, and must not be left to conjecture: Zimmerman v. Weinroth, 272 Pa. 537, 116 A. 510; Longden v. Conestoga Transportation Co., 313 Pa. 561, 169 A. 884." (emphasis supplied). Carroll v. Pittsburgh Railways Co., 200 Pa.Super. 80, 187 A.2d 293 [1962].

"Even if we assume, arguendo, that the record would support a finding of permanent injury, that is not equivalent to a finding that earning power has been impaired: Kmiotek v. Anast, 350 Pa. 593, 39 A.2d 923." Carroll v. Pittsburgh Railways Co., *supra*, at p. 84, 187 A.2d at p. 295.

On this record the permanent injury is clear, the extent of loss of earnings in the past and the extent of impairment of future earning power is disputed.

"This uncertainty of honest medical opinion should not be the basis for any finding by the jury of *permanent* injury but is sufficient, on the other hand, for the jury to find some future disability." Stevenson v. Pa. Sports & Enterprises, Inc., 372 Pa. 157 at p. 165, 93 A.2d 236, at p. 240 [1952].

Thus where plaintiff here complains that the court's charge inadequately covered the effect of an intervening accident, we cannot say that the jury were thereby precluded from considering all damages claimed. The jury may well have included in their award all the damages covered by the bicycle accident and its aggravation of plaintiff's pre-existing injuries, but on the other hand limited the amount awarded for loss of future earning power because of the incomplete nature of the supporting evidence.

Plaintiff complains of the exclusion of certain evidence. The only important limitation which we placed on plaintiff at trial was on testimony of Dr. Berkman as to the results of an examination made by him shortly before trial, on which no pre-trial report was furnished. For this purpose, Dr. Berk-man was a new medical witness. His last contact with plaintiff as a treating physician was three years prior to trial and he testified fully to this. His pre-trial examination was solely for the purpose of a present evaluation, and plaintiff was warned by the pretrial judge that if a new physician were to be called upon to examine plaintiff prior to trial this should be timely done in order that the defendant might receive the report before trial. The exclusion of such testimony without a prior report is a well standing practice in this court under our pre-trial rules in support of a strong policy against the introduction of surprise testimony of expert opinion witnesses. Plaintiff was not deprived of adequate medical testimony as to his present condition and future prospects because Dr. Coulson, his treating physician testified fully on these matters.

We have considered fully all the reasons advanced by plaintiff in his motion for new trial and have heard extensive argument thereon. We cannot see where plaintiff was denied a fair and full trial of all issues or where plaintiff's verdict was reduced by any improper exclusion of testimony on damages.