Kmiotek *v.* Anast et al., Appellants.

Argued October 3, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson and Stearne, JJ.

*Nathan M. Katz,* with him *Frank R. Sack* and *Charles Lysle Seif,* for appellants.

*John E. Evans, Jr.*, with him *John E. Evans, Sr.*, and *Evans, Evans & Spinelli*, for appellee.

OPINION BY MR. JUSTICE LINN, November 27, 1944:

Defendants, who conduct a moving picture theater, appeal from judgment against them in a suit by a patron for personal injury and complain that they were not negligent, that plaintiff was guilty of contributory negligence, and that the learned trial judge erred in his instructions to the jury.

April 10, 1940, the plaintiff and his wife occupied seats near the main aisle about ten rows from the rear. It was a small theater containing about 340 seats. After having been there for some time, and while "the picture was going on" he asked an usher where the toilet was. The usher informed him that it was "down in the basement," and pointed to the door a short distance away, opening on a stairway to the basement. The usher did not offer to flashlight him to the door and he did not ask for assistance; he walked to the door and pushed it open and fell down the steps and fractured his skull. He did not see that there was a change in the floor-level within eight inches of the front of, and extending the entire width of, the door. It was necessary to step down seven inches, push open the door and descend from the top step, ten inches wide, eight inches of which extended into the auditorium. In stepping from the floor-level toward the door, without seeing and allowing for the difference in levels, the plaintiff lost his balance and fell.

Alongside the door, a short distance from the floor, was a yellow bulb light, shaded from the auditorium but designed to show that the top step to the basement was in the auditorium at a lower level and partly covered by the bottom of the door. There was also a shaded orange colored light on the adjoining wall on the opposite side about six feet from the floor. The lighting was very dim.

It is established ". . . that one maintaining a theater, or similar place of amusement for which admission

is charged, is not an insurer, but must use reasonable care in the construction, maintenance and management of it, having regard to the character of the exhibitions given and the customary conduct of patrons invited." *Haugh et al. v. Harris Bros. Amusement Co.,* 315 Pa. 90, 92, 172 A. 145; Restatement, Torts, section 343.

There was no evidence to submit to the jury to support the allegation that the theater was defectively constructed at the place in question. If, in the circumstances, the lighting was not reasonably adequate, or if the usher should have warned plaintiff of the condition of the top step of the stairway when he pointed to the door, or should have lighted him to that point, a jury would be justified in finding that defendants had failed in their duty. Considering the oral evidence with the photographs, we conclude that there was evidence from which the jury might find defendants negligent and that plaintiff's contributory negligence did not so clearly appear as to justify a directed verdict for defendants.

While in those respects we agree with the learned trial judge, we must sustain defendants' objections to instructions on damages and the eleventh assignment of error.

For more convenient consideration, damages in these cases are generally considered under several heads: (1) wages lost; (2) reasonably necessary expenses; (3) loss of earning power, partial or total, temporary or permanent; (4) pain and suffering.

At the time of the accident, plaintiff, an unskilled workman without a trade, was employed by the WPA "laboring, shoveling on the highway"; his wages were assumed to be $25. a week, though it appears to have been more than he received. His injury kept him from work for three weeks. The jury was instructed that the $75. wages lost, together with expenditures for the services of physicians and hospital x-rays, amounted to "$265 or $280"; defendants raise no question about those elements of damage.

There is no evidence of total permanent impairment of earning power and such evidence as was offered is not sufficient to include in the verdict the element of partial impairment. In *Goodhart v. Penna. R. R. Co.*, 177 Pa. 1, at p. 15, 35 A. 191, we said: ". . . the loss of earning power, is not always easy of calculation. It involves an inquiry into the value of the labor, physical or intellectual, of the person injured before the accident happened to him, and the ability of the same person to earn money by labor physical or intellectual after the injury was received." See also *Tingle v. C-M Newspapers, Inc.*, 318 Pa. 537, 540, 179 A. 80.

When he returned to work he became a flagman, having told his boss that he could not do shoveling. He kept at that until the WPA project was completed in 1941. He was then employed for six months on the P. & L. E. railroad as a trackwalker. He gave up that job for employment January 30, 1942, by the Pittsburgh Steel Foundry for which he was working at the time of the trial, as a chipper, working on steel plates with an automatic air hammer.[1] He testified that he suffers with headaches about four times a week and also has spells of dizziness.

The learned judge, after stating the amount of earnings lost and expenses incurred, instructed the jury: "Now then the next item that would make up his verdict would be for loss of earning power if you find that there is any lost earning power." The instruction continued: "Would his opportunities in the future during his industrial life have been increased if he did not have this concussion of the brain which is still, according to him, giving him trouble in the nature of headaches,

---

[1] Concerning this work appellants' brief says: ". . . that the task of 'chipper' involves bending, work with a sledge, a crow bar, the lifting of weights and frequent subjection to continued vibration from the use of an air hammer; that at the time of his employment in this capacity he was examined by his employer's physician and was found acceptable; . . ."

dizziness and so forth. If so, you would be entitled to allow something for that, that is the loss of earning power either from the time of the accident or from the present time or even in the future." The inquiry should have been whether his earning power was diminished by the accident, not whether "his opportunities in the future during his industrial life" would have been increased. The subject was referred to again at the conclusion of the general charge by a colloquy too long to quote, but in the course of it counsel for the plaintiff said: "On the question of lost earning power, Your Honor, Mr. Katz [for defendant] mentioned an alternate amount to the jury. Now it has been brought up, I believe the doctor testified in his opinion Kmiotek has suffered future lost earning power as the result of this too. The Court: Their opinion is no better than that. They both[2] said that his condition is now chronic and permanent. So much may be taken for granted. If the jury believes that the man without his headache and dizziness would have had higher earning power, we leave that up to them. Isn't that the law? [Counsel for plaintiff] I believe that is the law."

This was erroneous instruction as applied to the evidence. The case was tried more than three years after the injury. While the plaintiff lost three weeks' work immediately after the accident, he had worked constantly thereafter except for one week in March, 1942, and was receiving higher wages than before he was injured. A physician testified plaintiff had ". . . made a full and complete recovery from this injury" and that there was ". . . no lessening of his earning capacity." Another testified that his injury ". . . interfered with the man's earning capacity." While the record would support a finding of permanent injury, that is not equivalent to a finding that earning power is impaired. Plaintiff had the burden of proof but the evidence was not sufficient to

---

[2] Plaintiff had called two physicians.

permit the jury to include that element of damage in its verdict; it would have been mere guess-work. "Loss of earning power is only one of the elements of damage in cases of personal injury, but it is an element which must be fairly proved before an allowance can be made therefor." *Helmstetter v. Pittsburgh Rwy. Co.*, 243 Pa. 422, 425, 90 A. 203. In *Piper v. Adams Express Company*, 270 Pa. 54, 62, 113 A. 562, Mr. Justice FRAZER said: "The jury . . . may consider evidence showing his physical condition and the character of the work he performed both before and after the accident, and award damages for loss of his earning-power, if such evidence justifies the conclusion that such power had in fact been reduced as a result of the injury . . ." See also, *O'Hara v. Scranton*, 342 Pa. 137, 139, 19 A. 2d 114; *Revak v. Anderson*, 348 Pa. 65, 69, 33 A. 2d 917. If there is evidence of partial or temporary impairment, the jury should be instructed to find the extent of it and the period during which it will probably continue. "It was their duty to determine, from the evidence, whether plaintiff's impairment of earning power would last until the end of his life expectancy, or, if not, how soon it would probably change for the better, and to adjust their award [by the present-worth rule] on that score accordingly." *McCaffrey v. Schwartz*, 285 Pa. 561, 567, 132 A. 810. In *Reitler v. Pa. R. R. Co.*, 238 Pa. 1, at page 8, 85 A. 1000, ELKIN, J., said: "State of health, habits of life, character of employment, the increasing disabilities of age, and many other things of like character, which in the course of nature reduce the earning power, must be taken into consideration in determining what is proper compensation for the loss of future earnings. It is the loss of future earning power that is to be compensated in damages, and that loss may be distributed over a period of ten, fifteen or twenty years. As men grow older and less able to work their earning power is not so great, and this fact is to be taken into consideration. When the loss of future earning power is anticipated in a ver-

dict, it should be the exact equivalent, or present worth, of his future loss of earnings during the several years of his life expectancy. It is the duty of the court to so instruct the jury: *Wilkinson v. North East Boro.*, 215 Pa. 486; *McLane v. Pittsburgh Railways Company*, supra. When there is only a partial loss of earning power, the jury must determine what that partial loss is under the evidence, the number of years it is likely to continue, and then find the present worth of the amount so ascertained." The confusion resulting from the instructions complained of was increased by the instruction that the physicians said plaintiff's condition ". . . is now chronic and permanent. So much may be taken for granted . . ." The statement that the condition "may be taken for granted" did not take into account the evidence of defendants' witness quoted above; that evidence could not be ignored. The jury was not bound to accept the opinions of the plaintiff's physicians.

By the eleventh assignment of error, defendants complain of an extract from the charge in which the learned judge described to the jury the facts in *Dively v. Penn-Pittsburgh Corporation*, 332 Pa. 65, 2 A. 2d 831, and stated that it was ". . . a case somewhat analogous to this" and then read to the jury two of the headnotes [3] from the report of that case. We all agree that this detailed reference to the facts of the *Dively* case, as compared with the case on trial, was so apt to mislead the jury as, in the circumstances, to be erroneous. In advising a jury of the rules of law to be applied to the evidence

---

[3] We quote from the charge: "The Supreme Court said, in that case, Syllabus 3: "In determining the question of the contributory negligence of a person injured by a fall in a dimly-lighted place, the controlling factors are the degree of darkness and the justification for the injured person's presence in the place of danger.' And again in Syllabus 5, which practically concludes the opinion which was written by Mr. Justice Stern: 'A person who is not a trespasser and has some fairly compelling reason for walking in a place which, though dark, is not utterly devoid of light, and who does so, will not be declared contributorily negligent as a matter of law.'"

from which the jury must find the facts, a trial judge may state a rule which he deduces from the decisions or he may read an applicable rule from a decision, or, if pertinent, may read from a statute. But a comparative recitation of facts of ". . . a case somewhat analogous to this" as an introduction for the rules applicable to the case in hand may be misleading, as we think it was here. Syllabus 5 stated a rule for the guidance of courts; when the learned judge applied the rule by submitting contributory negligence to the jury, the purpose of the rule was accomplished; it could not aid the jury.

The complaints of headaches, dizziness and the like are compensable under the last of the items of damage mentioned above—pain and suffering. No complaint is made of the manner of their submission.

Judgment reversed and new trial ordered.