## Sherin *v.* Dushac, Appellant.

Argued May 22, 1961. Before JONES, C. J., BELL, JONES, COHEN, BOK and EAGEN, JJ.

*Robert L. Orr,* with him *Harold F. Reed, Jr.,* and *Reed, Ewing, Orr & Reed,* for appellant.

*John D. Ray,* with him *Ray & Good,* for appellee.

OPINION BY MR. JUSTICE BOK, July 17, 1961:

This case, begun in trespass, ended in a judgment following a verdict in plaintiff's favor for $25,000. Defendant filed a motion for a new trial, which was overruled, and consequently appealed after judgment.

As the case involves defendant's car striking the plaintiff's halted car in the rear, liability is admitted and the two questions before us have to do with damages. The main one has an odd twist. Defendant wanted to cross-examine the plaintiff about his loss of earning power and sought to do so by referring to his

income tax returns, which had been produced by earlier depositions. To this plaintiff objected, and when the battle lines were cleared it became apparent that defendant wanted plaintiff's damages to depend on his profits, or the lack of them, while plaintiff wanted to establish his loss of earning power as a day laborer, at a wage of $2.25 per hour.

The facts behind this unusual position are that the plaintiff was in the roofing and heating business for himself. He had his son and two other boys as helpers, and he worked as a laborer with them. The work required heavy lifting. They averaged 50-hour weeks throughout the year, balancing work that was light in winter against heavier work in summer. Plaintiff's average weekly wage was $105.

His injury consisted of an injured back: the fifth lumbar vertebra appeared to have moved forward. Some areas of the spine were not solid bone, which occurs in four to five per cent of people, and plaintiff had had a low back injury in 1947 and a fractured vertebra from an accident in 1955. According to the medical testimony, the condition resulting from the instant injury would last for a considerable time in the future, and the plaintiff should not engage in sustained heavy physical effort, which he said pained him when he tried it and persisted. His doctor advised a spinal fusion, a major operation with from 75 to 90% chances of success, but the plaintiff resisted the suggestion. The seriousness of the operation, the reasonableness of plaintiff's resistance to it, together with the other factors in the case, were before the jury. Special damages came to $608.17, and the operation, with doctor's fees and hospital charges, would be $1100.

The plaintiff's theory was that as the result of the accident he had lost his earning power as a laborer, and as his business was conducted by manual labor his loss of earning power should be measured by the going rate

of $2.25 or $2.30 per hour in the labor market. The defendant's theory was that the plaintiff ran his own business and was a proprietor: hence his loss should be measured by his lost earnings, or profits. It is likely that these are smaller, although they are not in evidence.

Loss of wages between accident and trial is not before us. Our problem concerns future damages arising from future inability to work and earn, and this means loss of earning power: *Mazi v. McAnlis,* 365 Pa. 114 (1950), 74 A. 2d 108; *Bell v. Yellow Cab Co.* 399 Pa. 332 (1960), 160 A. 2d 437. And no specific exception was taken to any part of the court's charge, only a general exception.

The pertinent rules are that profits realized from a business with invested capital or which employs the labor and skill of several individuals may not be shown to establish loss of the owner's earning power. This is the general rule: *James v. Ferguson,* 401 Pa. 92 (1960), 162 A. 2d 690; *Bell v. Yellow Cab Co.,* supra, (399 Pa. 332); *Dempsey v. City of Scranton,* 264 Pa. 495 (1919), 107 A. 877; *Baxter v. Philadelphia and Reading Railway Co.,* 264 Pa. 467 (1919), 107 A. 881. The reason, of course, is that profits are generally speculative, may come from sources other than the owner, and are usually dependent on other factors, such as the condition of the market, the value of labor, the availability of credit, and the like. In such cases the measure of loss of earning power is the value of the owner's services in the business.

On the other hand there are exceptional cases of small, personal businesses where little capital or labor is needed and where in consequence the profits are the direct result of the owner's labor and so are the best available measure of his earning power: see cases cited just above.

The point is not to decide which concept of damage will provide the larger verdict but which more nearly

fits the plaintiff's condition. He testified that at the time of the accident he had as helpers his minor son and two others. There is no evidence of any invested capital. Since the accident he does no physical labor but supervises and teaches five permanent employees: at one time he had as many as twenty-eight. It is therefore clear that while he may have been primarily a laborer before the accident, he became undoubtedly a proprietor after it, with his earnings dependent upon the labor of others.

The following charge of the lower court in *Gilmore v. Philadelphia Rapid Transit Co.,* 253 Pa. 543 (1916), 98 A. 698, which is quoted approvingly in *Dempsey v. City of Scranton,* supra (264 Pa. 495), clarifies our problem: " 'A man's business which goes on after he is hurt may have success or it may have disaster for other reasons than the accident. If he has a plant, no matter if it is a small plant, in which he raises flowers, it involves the buying of bulbs and stock and it involves the question of freeze out in winter and blight and other things which sometimes make a season disastrous, although otherwise it would look very promising. A man's labor enters into that business as well as his stock, and the fact that in one year he has a good year and in another he has a bad year may be the result partly of bad business conditions and partly of conditions affecting his health. It is impossible to split them, and the law wisely says we cannot consider the results to the man's business, if it is business that goes on and if it is a business in which he could employ somebody else to do his work. *In my view of the case, owing to the fact that Mr. Gilmore carried on his business until to-day, and could employ help to do what he could not do himself, the cost of the help would be something which could be considered, and not what was the effect ultimately upon his business as shown by yearly statements.' "* (Emphasis supplied)

We went on, in *Dempsey,* to discuss the value of a man's services in his business, and said this: "The services of a man who, like the plaintiff in this case, has, by his personal labor, skill and business ability, built up and managed a business for a period of years, is manifestly worth more than the mere cost of hiring another temporarily to fill his place. The thorough knowledge of the business thus acquired, together with the personal acquaintance with the customers, has a value in the commercial world readily recognized by any business man. This being so, no valid reason appears why one responsible for an injury should be heard to say that damages based upon such considerations are merely conjectural."

In view of these decisions, since the only money evidence in the record is the wages of a laborer, it may be that the plaintiff got even less than he might have under the concept of service in the business.

We conclude that the ruling of the trial judge forbidding cross-examination of the plaintiff based on his tax returns was correct.

The second point raised by defendant has to do with the alleged inadequacy of the evidence of his life expectancy and has no merit.

In *Littman v. Bell Telephone Co. of Pennsylvania,* 315 Pa. 370 (1934), 172 A. 687, we said: "Mortality tables are only to be used as a factor with all the other factors in the case, from which totality of factors the jury is to determine as best it can the life expectancy in issue. When the jury has these tables before it and locates on them the age of the person whose life expectancy is in issue, it is, on that issue, not at the end but merely at the starting point of its calculations. Such tables do not assume to establish as a certainty that any person of the age indicated will live for the identical period specified. With the expectancy indicated by the table as a basis of calculation, the jury must

consider the person's health, habits, occupation, surroundings and any other elements which in his case will be likely to operate for or against his longevity."

And we added, in *McCaffrey v. Schwartz,* 285 Pa. 561 (1926), 132 A. 810: "Finally, in none of our decisions have we said that such tables are necessary to either plaintiff's or defendant's case; we have merely said that they are relevant proofs and admissible when offered."

No tables were offered in evidence. The trial judge charged on the factors relating to future loss of earning power, and no objection was taken to his treatment of the subject. There was no error here.

Judgment affirmed.