455 A.2d 670

**Wilbert JANSON, Jr. and Wilbert Edward Janson, Appellants,**

**v.**

**Robert F. HUGHES and Chemargro Corporation.**

Superior Court of Pennsylvania.

Argued June 10, 1980.

Filed Dec. 17, 1982.

Reargument Denied Feb. 23, 1983.

Thomas J. Burke, Ardmore, for appellants.

Charles W. Craven, Philadelphia, for appellees.

Before PRICE, WICKERSHAM and LIPEZ, JJ.

LIPEZ, Judge:

Plaintiff[1] commenced this trespass action for injuries sustained when the vehicle he was operating, while stopped at a red light, was struck from the rear by defendant Robert F. Hughes, who was driving a vehicle owned by his employer, defendant Chemargro Corporation. The jury awarded plaintiff $5,000. Plaintiff moved for a new trial on the basis of several issues related to damages. After denial of those motions and entry of judgment, plaintiff took this appeal, in which he has abandoned all but one of his claims—that the trial judge erred in precluding the jury from considering impairment of plaintiff's earning power as an element of damages. We agree with this contention, and hence we reverse and grant a new trial limited to the issue of damages.

The test for impaired earning capacity is whether the plaintiff's "economic horizon" has been shortened. *See generally Frankel v. Todd*, 393 F.2d 435, 438–40 (3d Cir. 1968), *cert. den'd*, 393 U.S. 855, 89 S.Ct. 137, 21 L.Ed.2d 120 (discussing Pennsylvania Supreme Court cases which developed this standard). The court below held that there was no evidence that plaintiff's economic horizon had been limit-

---

**1.** Throughout these proceedings, the appellants and appellees have referred to the injured party as if he were the sole plaintiff, although technically his father was also a plaintiff because the injured party was a minor when the action was commenced. For the sake of simplicity, we are following the same practice as the parties.

ed in any way. We disagree. One of plaintiff's medical experts, Dr. Snedden, testified that some symptoms of plaintiff's back and neck injury were permanent, and as a result plaintiff would always have to restrict his occupational activities in the future. Plaintiff would be unable to do heavy work, such as lifting, because it would undoubtedly cause his symptoms to flare up and could lead to total disability. Plaintiff's other medical expert, Dr. Russo, concurred in the findings of permanent injury and plaintiff's resulting inability to do certain types of work.

The testimony of Doctors Snedden and Russo was clearly sufficient to raise a jury question as to impairment of plaintiff's earning power. *See Wright v. Engle,* 256 Pa.Super.Ct. 321, 326–27, 389 A.2d 1144, 1146–47 (1978); *Frankel v. Todd, supra.* In holding to the contrary, the trial judge did not rely on any authority in his opinion, although in ruling on the question at trial, he had stated that his decision was supported by *Baccare v. Mennella,* 246 Pa.Super.Ct. 53, 369 A.2d 806 (1976). That case is easily distinguishable, since it merely held that "because there was no evidence regarding the probability that the disability would persist in the future the jury could not consider any future loss of damages." *Id.,* 246 Pa.Superior Ct. at 58, 369 A.2d at 808. Here such evidence was provided by plaintiff's medical experts.

 Defendants argue that evidence of permanent injury by itself is insufficient, and the evidence must also show that the injury will prevent the plaintiff from engaging in a specific type of work. Plaintiff's medical experts, Doctors Snedden and Russo, also met this latter requirement, because of their specific testimony that plaintiff's injury would preclude his engaging in work involving heavy lifting. While this evidence, like most evidence of impairment of earning power, is imprecise and difficult to evaluate, it is nevertheless sufficient under the Pennsylvania Supreme Court cases discussed in *Frankel v. Todd, supra,* cited with

approval in *Wright v. Engle,* supra, 256 Pa.Super.Ct. at 327 n. 2, 389 A.2d at 1147 n. 2.[2]

Judgment reversed, and a new trial, limited to damages only, is ordered.

PRICE, J., filed a dissenting opinion.

PRICE, Judge, dissenting:

The instant appeal is from the entry of judgment following the order of the Court of Common Pleas of Montgomery County denying a motion for new trial filed by appellants, Wilbert Janson, Jr. and Wilbert Edward Janson. Appellants contend that a new trial is required because the trial judge committed reversible error in removing from the

**2.** A dictum in *Wright v. Engle,* 256 Pa.Super.Ct. 321, 327 n. 3, 389 A.2d 1144, 1146 n. 3 (1978) purported to distinguish *Kmiotek v. Anast,* 350 Pa. 593, 39 A.2d 923 (1944) and *Carroll v. Pittsburgh Railways Company,* 200 Pa.Super.Ct. 80, 187 A.2d 293 (1962) on the ground that in those cases there was positive medical testimony that the injured plaintiff had recovered, while such was not the case in *Wright.* However, this does not mean that *Kmiotek* and *Carroll* stand for the proposition that the plaintiff can never recover for impairment of earning power if the defense presents evidence that the plaintiff had recovered. *Kmiotek* held that it was error to instruct the jury that the permanence of plaintiff's condition may be taken for granted where there was conflicting medical testimony. The *Kmiotek* Court reasoned that "[t]he jury was not bound to accept the opinions of the plaintiff's physicians." 350 Pa. at 600, 39 A.2d at 926. Of course, it does not follow that the jury is bound to accept the testimony of the defense witnesses. To the extent the dictum in footnote 3 in *Wright v. Engle, supra,* might appear to suggest the contrary, it is totally inconsistent with the numerous Supreme Court holdings discussed in *Frankel v. Todd, supra.* That discussion in *Frankel* is cited with approval in the immediately preceding footnote in *Wright.* 256 Pa.Super.Ct. at 327 n. 2, 389 A.2d at 1146 n. 2. This should make it clear that whatever the purpose of the dictum in footnote 3 in *Wright,* it is not intended to indicate any weakening of the completely settled principle that factual conflicts in testimony are exclusively for the jury to resolve. In deciding whether to admit plaintiff's evidence of impaired earning power, the court must assume that properly admissible evidence is true, and determine only whether that evidence is legally sufficient to raise a jury question. The legal sufficiency of plaintiff's evidence does not depend on whether the defense puts on opposing evidence. Thus, in *Carroll v. Pittsburgh Railways Company, supra,* this court held that there was no basis for a claim of impaired earning power because plaintiff's evidence by itself was legally insufficient, and not because the defense presented contradictory evidence.

jury's consideration the issue of the future impairment of Wilbert Edward Janson's earning capacity. I disagree and would thus affirm.

On February 16, 1973, Wilbert Edward Janson was driving to work in a Volkswagen bus owned by his father, Wilbert Janson, Jr. While stopped at a traffic light, his bus was struck in the rear by a vehicle operated by appellee Robert F. Hughes, an employee of Chemargro Corporation, the owner of the subject vehicle and an appellee herein. Neither vehicle was seriously damaged and Janson drove on to his place of employment and worked throughout the evening with no complaint of injury. At some point thereafter, Janson began to experience neck and back pain and thus sought treatment from his family physician. Ultimately, Janson was referred to Dr. Hal Snedden, an orthopedic surgeon, who diagnosed his problem as "an instability of the cervical spine due to a ligimentous injury," (N.T. 95), allegedly sustained in the accident. Appellants thus commenced the instant action seeking damages for permanent injuries, pain and suffering, past and future medical expenses and future impairment of earning capacity. The trial judge precluded the jury from considering future impairment of earning capacity and a $5,000 verdict was returned in favor of appellants. Judgment was entered following the denial of post-verdict motions and appellants appealed.

Impairment "of earning capacity refers to the disadvantage a plaintiff suffers in competing with uninjured persons in the employment market." *Heckman v. Federal Press Company*, 587 F.2d 612, 618 (3d Cir.1978). Thus, "[i]n order to collect for the loss of future earnings, a plaintiff must establish that his economic horizon has been shortened." *O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Superior Ct. 272, 280, 423 A.2d 1251, 1255 (1980). While there exists no litmus test for determining whether this burden has been met, it is clear that more is required than proof

that the plaintiff's condition is permanent.[1] In *Kmiotek v. Anast*, 350 Pa. 593, 39 A.2d 923 (1944), for example, plaintiff, an unskilled workman, fractured his skull when he fell down a flight of stairs in a theatre. As a result, plaintiff suffered from headaches and dizziness following the accident, but he apparently lost no time from work and he enjoyed an increase in earnings. Furthermore, although one doctor testified that plaintiff's earning capacity had been impaired, a second physician posited that plaintiff had fully recovered from his injuries and thus suffered no impairment of earning capacity. Concluding that there was no evidence that plaintiff's earning capacity had been impaired, the *Kmiotek* court articulated its reasoning thus:

> The case was tried more than three years after the injury. While the plaintiff lost three weeks' work immediately after the accident, he had worked constantly thereafter except for one week ... and was receiving higher wages than before he was injured. A physician testified plaintiff had "... made a full and complete recovery from this injury" and that there was "... no lessening of his earning capacity." Another testified that his injury "... interfered with the man's earning capacity." *While the record would support a finding of permanent injury, that is not equivalent to a finding that earning power*

1. The extent of future harm to the earning capacity of the injured person is measured by the difference, viewed as of the time of trial, between the value of the plaintiff's services as they will be in view of the harm and as they would have been had there been no harm. This difference is the resultant derived from reducing to present value the anticipated losses of earnings during the expected working period that the plaintiff would have had during the remainder of his prospective life, but for the defendant's act. . . . Accordingly, the trier of fact must ascertain, as nearly as can be done in advance, the difference between the earnings that the plaintiff probably would or could have received during his life expectancy but for the harm and the earnings that he will probably be able to receive during the period of his life expectancy as now determined. In this computation, there are considered the type of work that the plaintiff has done and the type of work that, in view of his physical condition, education, experience and age, he would have been doing and will be likely to do in the future during the working period of his life, together with all other matters reasonably relevant.
Restatement (Second) of Torts § 924, comment d at 525–26 (1965).

*is impaired. Plaintiff had the burden of proof but the evidence was not sufficient to permit the jury to include that element of damage in its verdict; it would have been mere guess-work.*

350 Pa. at 598–99, 39 A.2d at 924 (emphasis added).

Similarly, in *Carroll v. Pittsburgh Railways Company*, 200 Pa.Superior Ct. 80, 187 A.2d 293 (1962), this court perceived that the record was "devoid of any evidence upon which the jury could have predicated a finding that the future earning power of the husband-appellant had been impaired." *Id.*, 200 Pa.Superior Ct. at 83–84, 187 A.2d at 294. In *Carroll*, the appellant, a welder, was injured in a trolley accident. He missed no time from work, claimed no loss of wages and, apparently, adduced no evidence establishing a *potential* loss of earnings or an inability to accept employment opportunities as a result of his injuries. Indeed, the only pertinent evidence presented was testimony that appellant's back would "get more rigid and become stiffer." *Id.*, 200 Pa.Superior Ct. at 83, 187 A.2d at 294. Even accepting this testimony and ignoring the fact that it was contradicted by another physician, however, we held that proof of permanent injury does not establish that one's earning capacity has been impaired. *Id.* Accordingly, we affirmed the trial judge's decision refusing to submit to the jury the issue of impairment of earning capacity.

In the case *sub judice*, the record establishes that, at the time of the accident, young Janson was in the tenth grade and was employed on a part-time basis as an usher in a movie theatre. He subsequently worked as a stockboy for Woolworth's, as a dishwasher in a country club, and, in the summer, he secured a job as a painter. When Janson entered the eleventh grade, he began working in a hardware store where he remained for a period of three years.[2] Upon leaving the hardware store, Janson secured a position with the Lug-All Hoist Company where, at the time of trial, he was employed in the office. With the exception of days

---

2. It was undisputed that neither Janson nor his parents expected that he would pursue a post-secondary education.

on which he had an appointment with his physician or a scheduled treatment, Janson lost no time from work as a result of his injuries. There was, moreover, no direct evidence that appellant was inhibited in the performance of his job-related duties or that there were jobs which he would have attempted to secure but for his injuries.[3]

To be sure, appellant's medical witnesses testified that appellant's condition would continue to deteriorate, particularly if he did heavy work. Appellee's medical witness testified, however, that appellant was completely recovered and that he found "no physical evidence or radiographic evidence that [appellant] had any crippling after effects." (N.T. 456). In view of this conflicting testimony,[4] the complete absence of evidence as to appellant's present earnings, his potential earnings,[5] or the employment opportunities allegedly beyond his reach because of his physical limitations, I would conclude that appellant failed to sustain his burden of proof on this issue. Under the majority opinion, the jury will be permitted to determine the extent to which appellant's earning capacity had been impaired, and that determination will necessarily have been based on

3. Appellant's mother did testify that her son's injury "affected Wilbert's [life] because he can't really do ... the jobs he would really like to do." (N.T. 283). However, this assertion was corroborated neither by Wilbert's testimony nor by independent evidence intended to establish a career objective that had been frustrated by the injuries.

4. In *Wright v. Engle*, 256 Pa.Superior Ct. 321, 389 A.2d 1144 (1978), we held that the trial judge properly permitted the jury to determine the issue of impairment of earning capacity. The factor distinguishing *Kmiotek v. Anast*, 350 Pa. 593, 39 A.2d 923; *Carroll v. Pgh. Rwys Co.*, 200 Pa.Superior Ct. 80, 187 A.2d 293; and, presumably, the case at bar, from *Wright v. Engle, supra*, is that in *Kmiotek, Carroll* and the case *sub judice* "there was positive medical testimony that the injured plaintiff had recovered." 256 Pa.Superior Ct. at 327 n. 3, 389 A.2d at 1146 n. 3.

5. Appellant's assertion to the contrary notwithstanding, the wages received by the plaintiff in *Wright v. Engle*, 256 Pa.Superior Ct. 321, 389 A.2d 1144 (1978), both before and after the accident, constituted a part of the record produced in *Wright*. Record at 14a–16a, 63a, 82a. *See, e.g., Christides v. Little*, 274 Pa.Superior Ct. 343, 349, 418 A.2d 438, 441 (1980).

speculation. I believe the trial judge thus properly refused to submit that issue to the jury.

Accordingly, I would affirm the judgment of the court of common pleas.