500 A.2d 130

**Sandra Marie SERHAN, Appellant,**

v.

**Charles Corey BESTEDER, Appellee.**

Superior Court of Pennsylvania.

Argued March 20, 1985.

Filed Oct. 18, 1985.

12

David L. Kurtz, Harrisburg, for appellant.

Joseph J. Musto, Wilkes-Barre, for appellee.

Before CAVANAUGH, WICKERSHAM and ANDER-SON,* JJ.

* Judge Levy Anderson, Senior Judge of the Court of Common Pleas of Philadelphia, County, Pennsylvania is sitting by designation.

ANDERSON, Judge:

Appellant, Sandra Marie Serhan, plaintiff below, appeals from an Order of the lower court sitting en banc denying her motion for a new trial on the issue of damages only. Appellant argues that the trial court improperly refused to allow her to introduce her federal income tax returns as evidence of loss of past earnings and impairment of earning capacity, and that the court improperly refused to instruct the jury on those two items of damages.

We conclude that, as a matter of law, the plaintiff presented sufficient evidence of the nature of her injuries and the resultant disruptions to her drapery business to establish the existence of loss of earnings as well as impairment of earning capacity. We further conclude that there was sufficient evidence of the nature of plaintiff's business as well as her prior employment, so as to permit introduction of her income tax returns as proof of the amount of those items of damages. Finally, we conclude that the requested jury instructions should have been given.

During the early morning hours of November 13, 1977, twenty-six year old Sandra Marie Serhan was involved in an automobile accident. She suffered a compression fraction of thoracic 8 and 9 vertebrae which in turn has caused her to have neurogenic bladder disease. She has lost sensation and muscle control of her bladder and cannot urinate unless she takes a toxic medication. Her orthopedic and bladder problems had persisted to the time of trial, five years after the accident.

At the time of the accident, the plaintiff was the sole proprietor of Sara Sheen Draperies. She functioned as an interior decorator, visiting prospective clients in their homes to provide design ideas and to solicit work. In addition she maintained nine sewing machines in the basement of her home and made the draperies herself. She employed independent contractors to install the draperies and do slipcover work.

14

Prior to starting her own business in August, 1976, the plaintiff had been employed as an interior decorating consultant in a department store from 1973 to 1976.

The plaintiff experienced disability immediately following the accident. She felt very sharp radiating pains in her back which increased during the night. In the morning she found that she had wet her bed. She stayed in bed for one week. During that period she had pain in her neck, joints and back, and a lack of sensation in her bladder which she did not associate with the accident.

She saw Dr. Sternlieb, an orthopedic specialist on November 21, 1977. He advised her to take it very easy for the next six weeks. She followed the doctor's orders, but pain in her neck, right arm and right leg continued. She also noticed that her abdomen was getting larger and larger and she was not able to urinate at will. Her bladder would not empty until it became very full.

She saw her family doctor, John Grablewski, M.D., on December 29, 1977, and again the second week of January 1978, and thereafter once a week. Her condition did not improve and on February 26, 1978, she was hospitalized. Her bladder condition worsened in the hospital and she was seen by a urologist, Dr. Rumbaugh. She was catheterized and underwent exploratory surgery. She was also given medication, Urecholine, for an unspecified period of time, to stimulate bladder activity. The plaintiff was discharged from the hospital on March 6, 1978.

She was treated by Dr. Grablewski for her neck and back problem and Dr. Rumbaugh for the bladder difficulty through February of 1980 on a regular basis. During that period Dr. Rumbaugh had to stretch her urethra surgically to facilitate urination. The plaintiff was receiving physical therapy and there was some improvement to her neck and back.

She was hospitalized in February 1980 for five days because of abdominal pain. Dr. Manju G. Mukerjee was called in for consultation because the plaintiff could not

urinate and had to be catheterized. A cystoscopic examination was performed and Dr. Murkerjee put her back on Urecholine.

The plaintiff continued to see Dr. Mukerjee. She was hospitalized for the third time on March 17, 1980, after she was unable to void at all and her bladder had become very distended. She was given large doses of Urecholine and has been on that medication ever since.

She was hospitalized for the fourth time in April 1980, because she was not tolerating the Urecholine well and because she was again unable to void. Surgery was performed (a visual internal urethrotomy, during which incisions were made in the musculature of the urethra to reduce resistance). She continued to see Dr. Mukerjee regularly, first weekly and then every two weeks.

She was taught self-catheterization in the fall of 1980 because she was again having difficulty voiding. This procedure, however, resulted in frequent bladder infections. After one of these catheterizations she found blood in her urine.

In February 1981, she was hospitalized for the fifth time, for one week. Surgery was performed. She was catheterized for three days thereafter.

During this period she was still experiencing pain in her neck and back. She had regular visits with Dr. Mukerjee.

In November of 1981 she was hospitalized for the sixth time, for a period of two weeks, and more extensive surgery on her urethra was performed.

The testimony concerning the physical problems experienced by the plaintiff from November 1977 to the time of trial, which included six hospitalizations and four or five surgical procedures, was, we find, in and of itself sufficient to prove a disruption to her business and lay the foundation for proof of the amount of loss of earnings.

In addition, however, plaintiff provided specific testimony concerning disruption to her business. Miss Serhan testified that she did not work at all for two weeks after the

accident, and after that was only able to handle the work by subletting it to others because she could not lift heavy bolts of fabric by herself or do the sewing.

She said that during her first hospitalization in February of 1978, she was not able to conduct her business at all and that she received many phone calls from customers concerned about her absence. Without doing an injustice to the defendant, it can be reasonably inferred that Miss Serhan was neither personally visiting clients in their homes nor cutting and sewing draperies during her five subsequent hospitalizations, nor was she doing so during numerous doctors' appointments.

Plaintiff testified that from 1978 to 1981, she could not cope with much physical activity and could not do a lot of work. Before the accident she made all the draperies herself. Since the accident, the plaintiff sometimes has had to sublet the work because she cannot fulfill her obligations.

The plaintiff's brother, David W. Serhan, testified that after the accident "[h]er business seemed not to be as well. She wasn't able to put as much time into it and enthusiasm as she had in the past.... She spent a lot of time in bed." [N.T. 101a]. He testified further that he observed his sister on several weekends from September 1979 to the time of trial and that "[h]er business took a drop in her calls. Her business suffered a loss it seemed. She wasn't as active as she had been in the past." [N.T. 106a].

All of this evidence was more than sufficient to prove that the plaintiff sustained losses as a result of her injuries. The question then remained, how the plaintiff was to prove the amount of those losses.

To that end, the plaintiff testified about the conduct of her business; her capital investment in machinery, equipment and supplies; and her gross receipts and profits during 1977 from Schedule C of her income tax return. She detailed how the latter amount was calculated. Based on the above testimony, the plaintiff attempted to introduce

Schedule C of her federal tax returns for 1977 through 1981. The trial court denied the motion, and refused to instruct the jury on lost earnings to the time of trial.

■ The reason set forth in the opinion below for these rulings is that the net earnings of the business was not an accurate measure of the value of plaintiff's services to the business. We do not agree. In many cases, the appellate courts of this Commonwealth have held that where a business is small and the income which produces it is due principally to the personal services and attention of the owner, the net profits of the business may afford a reliable measure of the owner's earnings.

In *Bell v. Yellow Cab, Co.*, 399 Pa. 332, 160 A.2d 437 (1960), the Pennsylvania Supreme Court held:

"Ordinarily, earnings which represent the result of combined capital and personal services is not capable of establishing the earning power of the servitor. Where, however, the business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reliable criterion of the owner's earning power. As recognized in *Offensend v. Atlantic Refining Company*, 322 Pa. 399, 404–405, 185 A. 745, 'The general rule is that profits derived from a business are not to be considered as earnings and cannot be admitted as a measure of loss of earning power, but where they are almost entirely the direct result of personal management and endeavor, they are an accurate measure of earning capacity and admissible as such: *Dempsey v. City of Scranton*, 264 Pa. 495 [107 A. 725], and authorities cited therein; *Pietro v. P.R.T. Co.*, 298 Pa. 423 [148 A. 520].' It was on this theory that the testimony of the plaintiff's diminished earnings was introduced and the trial judge acted properly, in the circumstnaces, in receiving it in evidence for the purpose for which it was offered." 399 Pa. at 339, 160 A.2d at 441–42.

Following this ruling, our Court held in *Defulvio v. Holst*, 272 Pa.Super. 221, 414 A.2d 1087 (1979):

" 'We have never held that damages that are not capable of *exact ascertainment* are for that reason not recoverable.' *Ashcraft v. C.G. Hussey and Co.,* 359 Pa. 129, 58 A.2d 170 (1948)(emphasis in original). Although the general rule precludes use of earnings of a business as proof of lost earning power, '[w]here, . . ., the business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reliable criterion of the owner's earnign power.' *Bell v. Yellow Cab Co.,* 399 Pa. 332, 339, 160 A.2d 437, 441 (1960). Therefore, "Each case must depend on the nature and extent of the business, the amount of personal direction and labor of the party engaged in connection therewith, as well as the amount of capital invested and the labor employed." ' *Id.,* 399 Pa. at 340, 160 A.2d at 442 (quoting *Baxter v. Philadelphia & Reading Railway Company,* 264 Pa. 467, 475, 107 A. 881, 884 (1919) ). Thus, for example, in *Faber v. Gimbel Brothers,* 264 Pa. 1, 107 A. 222 (1919), our Supreme Court held that evidence of earnings from a partnership of which plaintiff was a member both before and after the accident was admissible to show decreased earning power as a result of the injury. The Court in *Faber* considered the fact that both partners devoted their entire time to the business and the nominal capital investment in the auto repair enterprise as factors relevant to its decision.

"The business in question in this case was a small partnership which required the full time and attention of the two partners and employed no other workers. As in *Faber,* the business was a repair service, and therefore, required little capital investment. We conclude that this case is within the exception to the general rule preventing admission of evidence of earnigns from a business to prove impaired earning capacity." 272 Pa.Super. at 226–27, 414 A.2d at 1090–91.

In explaining the trial court's ruling the opinion below states:

"... Plaintiff's income from her business after 1976 would not have properly shown loss of earning power, since the profits from her business were derived from the labor and skills of several individuals. The true test was the value of her services to the business, not her earnings. *James v. Ferguson*, 401 Pa. 92, 95 [162 A.2d 690] (1960)." (Op. p. 4).

Specifically, the opinion cites the fact that "Plaintiff stated she must 'sublet' her work when she 'cannot fulfill' her obligations." (Op. p. 3).

We find that the nature of the plaintiff's business clearly falls within the parameters of *Bell v. Yellow Cab Co.*, *supra*, and the cases decided thereafter.

■ Miss Serhan's business was very small in scope. In 1977 she grossed only $11,805.00. Her profit was $4,237.00. Her capital investment involved principally the purchase and installation of sewing machines in her basement. Virtually, the entire business was based on her labors. She acted as an interior decorator and visited customers in their homes to solicit contracts, and before the accident she made all the drapes herself. She used independent contractors for installation and slipcover work only. The fact that she had the expense of subletting drapery work after the accident was a clear measure of a portion of her damages and proof of the value of her services to the business, not a reason to deny her a recovery. Under those circumstances, the tax records were admissible to prove the amount of the loss. See *Defulvio v. Holst, supra.* An appropriate instruction regarding lost earnings should have been given.

■ With respect to impairment of earning capacity, the law requires only proof that the injured person's economic horizons have been shortened as a result of the tortfeasor's negligence. *Holton v. Gibson*, 402 Pa. 37, 166 A.2d 4 (1960); *Lewis v. Pruitt*, 337 Pa.Super. 419, 487 A.2d 16 (1985); *Janson v. Hughes*, 309 Pa.Super. 399, 455 A.2d 670 (1982).

In fact, our Supreme Court has said:

"The consideration of loss of earning capacity is not solely the comparative amount of money earned before or after an injury. The true test is whether or not there is a loss of earning power, and of ability to earn money." *Mazi v. McAnlis,* 365 Pa. 114, 121, 74 A.2d 108, 112 (1950). See also *Powell v. City of Philadelphia,* 311 Pa.Super. 526, 532, 457 A.2d 1307, 1309 (1983); *Wright v. Engle,* 256 Pa.Super. 321, 326, 389 A.2d 1144, 1147 (1978).

■ The plaintiff provided more than sufficient evidence linking her injuries to loss of earning capacity.

At the time of trial, the plaintiff was still seeing Dr. Mukerjee every two months. Dr. Mukerjee testified that Miss Serhan is partially disabled as a result of her bladder condition, which appears to be permanent. She is totally dependent upon Urecholine to stimulate urination and such dependence may be life-long. He testified that the medication is being given in extremely toxic doses and such treatment involves risk and danger. Periodic surgery, specifically internal urethrotomies to reduce resistance in the urethra, will be necessary. The plaintiff testified that she must measure her intake of fluids against her output of urine. She takes Urecholine four times daily, at 6:00 A.M., noon, 6:00 P.M. and midnight, and if she misses a single dose she must resort to self-catheterization, which sometimes results in infection. Besides the difficulty caused by the 6:00 A.M. and midnight doses of medication, the plaintiff has trouble sleeping because of orthopedic problems. The drug also causes unpleasant side effects, such as nervousness, and increases in perspiration and salivation.

Miss Serhan was also seeing Dr. Grablewski monthly at the time of trial. He testified that "[s]he has a chronic back injury, which is going to last her...." [N.T. 125a].

The plaintiff testified with respect to her orthopedic problems:

"I'm better now but not all better. I still have neck and a lot of sharp back pain in the same place, and in the lower right hip still weakness, caving sensation. Sitting for

long periods of time bothers me. Sharp movements will bother me...." [N.T. 95a].

She also said that movement of her right arm aggravates her back and she constantly uses the arm. Pain in that arm extends down through two fingers. She was still experiencing problems with her right leg.

At the time of trial, Miss Serhan was still subletting work to others which she did herself before the accident.

Miss Serhan's chronic orthopedic problems coupled with her bladder disfunction caused disruptions to her business up to the time of trial, which was five years after the accident. The medical testimony was that her condition is permanent. There is no reason to conclude that her medical problems will not cause the same type of business disruptions in the future as they did in the past.

■ The opinion of the court below states: "... we have no testimony indicating Plaintiff's injuries affect her ability to perform her occupation." [Op. p. 2]. This finding is clearly erroneous. An instruction on impairment of earning capacity should have been given.

■ Counsel for plaintiff requested that, in addition to Miss Serhan's income tax returns for the years 1977 through 1981, those for the three previous years when she worked at a department store as an interior decorator be admitted into evidence as proof of earning capacity. The court denied that request. Since impairment of earning capacity had been established, the earlier tax returns, as well as plaintiff's business returns, were admissible to prove her earning power. See *Sherin v. Dushac*, 404 Pa. 496, 172 A.2d 577 (1961); *Lewis v. Pruitt, supra*.[1]

In the case *sub judice*, the jury awarded plaintiff $15,-000.00. Because substantial trial errors resulted in this shockingly low verdict, a new trial on the issue of damages is necessary.

---

1. The earlier tax returns were also admissible to prove the value of plaintiff's interior decorating services to Sara Sheen Draperies. *Sherin v. Dushac, supra*.

Reverse and remand for a new trial on the issue of damages only. Jurisdiction is relinquished.

WICKERSHAM, J., joins in this opinion.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent. Following a jury verdict in her favor, Sandra Marie Serhan filed a motion for a new trial on the question of damages only. The lower court, sitting en banc, denied that motion. This appeal then followed wherein appellant raises two issues for our consideration:

(1) Whether the trial court erred in refusing to admit into evidence appellant's income tax records?

(2) Whether the trial court erred in denying appellant's request for jury instructions regarding loss of past earnings and reduction of earning capacity?

For the reasons which follow, I find no merit to appellant's contentions and would affirm the order of the trial court.

*Income Tax Returns*

The accident in which the appellant was injured occurred on November 13, 1977. Ms. Serhan at that time was engaged as the sole proprietor of an interior decorating business, Sara Sheen Draperies, which she had started in August of 1976. She testified that until January, 1976, she had been employed by Bergman's Department Store as an interior decorating consultant. At the trial in October 1982, the appellant sought to introduce copies of her federal income tax returns from 1973 through 1975 and 1977 through 1981 for the purpose of showing loss of earnings and reduction of earning capacity. The trial court sustained the appellee's objection to this proferred evidence and refused to allow its admission.

It is an often-stated tenet of the law that "questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court, whose decision will not be disturbed absent a clear abuse of that discretion."

*Gallegor by Gallegor v. Felder,* 329 Pa.Super. 204, 211, 478 A.2d 34, 38 (1984). *See also Burch v. Sears, Roebuck and Co.,* 320 Pa.Super. 444, 467 A.2d 615 (1983); *Lewis v. Mellor,* 259 Pa.Super. 509, 393 A.2d 941 (1978). It is against this standard that this court should evaluate the trial court's ruling on Ms. Serhan's tendered proofs.

In order to support her claim for earnings lost between the time of the accident and the date of trial, the appellant proposed to introduce copies of her federal tax returns. During this period, the appellant was operating her sole proprietorship. The trial court, within its discretion, disallowed this evidence on the grounds that the appellant had not laid the proper grounds for its admission.

In order for an injured plaintiff to recover damages for lost past earnings, it must be proven that such a loss in fact was suffered and that it was the proximate result of the defendant's act or omission. Moreover, these losses must be proven to a reasonable degree of certainty and not left to speculation and conjecture. *Gordon v. Trovato,* 234 Pa.Super. 279, 338 A.2d 653 (1975). In the case of a person employed on an hourly wage basis for example, it is frequently sufficient for the plaintiff to show that as a result of the injuries sustained in the accident, he was unable to perform his occupational duties and therefore unable to earn his hourly wage. There is a direct relationship in such a situation between hours lost and earnings lost.

However, in the present case the appellant operated her own business for which she did not receive a specific salary. Her earnings, or losses, were those of the business and, although they bore some relationship to the appellant's labors, they were also influenced by outside forces. For example, as the appellant testified, she often relied upon the services of other non-employees. Certainly their work affected the profitability of Sara Sheen Draperies.

Due to the nature of Ms. Serhan's employment her claim for loss of earnings is perhaps more akin to a claim for a loss of profits. The standard of proof in such a case has been defined as follows:

It is well settled that lost income or profit is recoverable in an action for the destruction or interruption of an established business, whenever they are not merely speculative or conjectural. In general, a court has the power to award damages up to the date of the ultimate judgment of the case. *Rea v. Ford Motor Co.*, 560 F.2d 554, 557 (3d Cir.1977), *cert. den.* 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281. Where lost income is redeemable, however, *"the testimony must show with a fair degree of certainty not only the diminution of income or profit but that it is fairly attributable to the wrong complained of. See Platou v. Swanton*, 59 N.D. 466, 474–75, 230 N.W. 725, 728 (1930).

*Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 126, 464 A.2d 1243, 1261 (1983). (emphasis added).

At trial, the appellant testified that she had been hospitalized several times between November 1977 and October 1982 to receive treatment for injuries suffered in the automobile accident. She also stated that, at least during the first eight-day hospitalization, she was unable to "conduct her business". Otherwise, the record indicates that Ms. Serhan returned to work shortly after the accident. Beyond this the only evidence relating to lost earnings were the proferred tax returns.

I note initially that, with the possible exception of appellant's 1977 income tax return, we have no indication as to what the excluded evidence would have revealed. Accordingly, I do not believe that we can properly conclude that the tax returns would have demonstrated that the appellant (or Sara Sheen Draperies) actually lost income following the accident. The burden is on the appellant to show "with a fair degree of certainty" the diminution of income. *Delahanty, supra.* On the record before us, I would not find that the trial court acted improperly in refusing to admit the 1977–1981 tax returns.

Moreover, notwithstanding whether the tax returns would have evinced a loss, the appellant also failed to introduce any testimony that the claimed losses were "fairly

attributable to the wrong complained of." *Delahanty, supra.* Although Ms. Serhan stated that she was hospitalized and, on one occasion, unable to work, she never testified that as a result she was unable to secure new business or fulfill prior contracts. Unlike the hourly wage earner, Ms. Serhan's absence from work would not necessarily translate into a loss of earnings. Because the appellant failed to satisfy this prerequisite of laying an adequate foundation for her claim, in my opinion the trial court did not abuse its discretion in rejecting the proffered tax returns.

In order to support her claim for reduction of earning capacity, the appellant proposed to introduce into evidence her federal tax returns for 1973 through 1975, when she was employed by Bergman's Department Store, and for 1977 through 1981, when she was self-employed. The trial court also refused to admit this proof.

At trial, the appellant presented evidence of the injuries which she suffered as a result of the motor vehicle accident: continuous neck and back problems; pain in her right leg and arm; bladder injury necessitating regular medical attention, including the continuous use of prescription medications; and the likelihood of long-term surgical and drug treatments for her bladder condition. The jury, in answer to a special interrogatory, found that the appellant's injuries were both serious and permanent.

It is the law of this Commonwealth that "[i]n order to collect for the loss of future earnings, a plaintiff must establish that his economic horizon has been shortened." *O'Malley v. Peerless Petroleum, Inc.,* 283 Pa.Super. 272, 280, 423 A.2d 1251, 1255 (1980). In satisfying this burden of proof, more is required than simply showing permanent injury. *See, e.g., Kmiotek v. Anast,* 350 Pa. 593, 39 A.2d 923 (1944); *Carroll v. Pittsburgh Rys. Co.,* 200 Pa.Super. 80, 187 A.2d 293 (1962). Rather, the plaintiff's burden has been outlined as follows:

> The loss of earning power and its amount must appear by proper and satisfactory proof and not left to mere conjecture: *Frysinger v. Phila. R.T. Co.,* 249 Pa. 555, 560 [95

A. 257, 259 (1915) ]. The value of such services as plaintiff performed prior to the accident and of such as she could perform thereafter, was the subject of proof, without which no recovery for diminution thereof can be sustained (*Kost v. Ashland Borough*, 236 Pa. 164 [84 A. 691 (1912) ] for, before an allowance can be made for loss of earning power, it must be fairly proved: *Helmstetter v. Pitts. Rys. Co.*, 243 Pa. 422 [90 A. 203 (1914) ]. "Earning power which is to be compensated in such cases must necessarily be the subject of substantive proof." (*Boggess v. B. & O. Railroad Co.*, 234 Pa. 379, 390 [83 A. 356, 360 (1912) ] ), without which it is error to submit the question to the jury: *McKenna v. Citizens' Natural Gas Co.*, 198 Pa. 31 [47 A. 990 (1901) ].

*McCaulif v. Griffith*, 110 Pa.Super. 522, 532, 168 A. 536, 540 (1933) (quoting *Zimmerman v. Weinroth*, 272 Pa. 537, 540, 116 A. 510, 511 (1922) ). Thus, while the plaintiff need not prove the extent of his loss to a degree of mathematical certainty, "there must be some evidence from which a jury can reasonably infer that earning power will probably be reduced or limited in the future." *Kearns v. Clark*, 343 Pa.Super. 30, 42, 493 A.2d 1358, 1364 (1985).

A fair degree of latitude is often afforded to the jury in this regard. For example, in a case where a claim for loss of future earning capacity was made on behalf of an eighteen year old college student, this court opined: "Where, as here, the evidence discloses the age, physical and mental conditions, and habits of the injured person, a determination of future earning capacity may be made by the fact-finder in reliance upon the knowledge and common sense acquired through the experiences of life." *Marinelli v. Montour R. Co.*, 278 Pa.Super. 403, 419, 420 A.2d 603, 611 (1980) (citations omitted). Similarly in other instances the court has allowed impairment of earning capacity to go to the jury on evidence of the nature of the plaintiff's occupation and his injuries. *See, e.g., Gary v. Mankamyer*, 485 Pa. 525, 403 A.2d 87 (1979) (lay evidence concerning the nature of plaintiff's duties as a practical nurse and the

difficulties which she experienced in performing those duties following the accident was sufficient to take the question of the extent of her disability and its impact on her earning capacity to the jury); *DiChiacchio v. Rockcraft Stone Products Co.*, 424 Pa. 636, 225 A.2d 913 (1967) (evidence that carpenter would suffer indefinitely from nervousness and dizziness and that as part of his occupational duties he was required to climb ladders and scaffolds was sufficient to allow jury to find reduction of earning power); *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983) (plaintiff's own testimony that he could no longer perform his job as a print press operator due to permanent injury to his knees was sufficient to afford the jury a reasonably fair basis on which to determine loss of earning capacity). In those cases, the evidence was such that the jury could reasonably infer a reduction in earning capacity based on their own knowledge and experiences.

In other instances, however, it is necessary for the plaintiff to produce more direct evidence that the injuries suffered will effect a reduction in earning capacity. For example, in *Powell v. Montgomery*, 27 Ohio App.2d 112, 272 N.E.2d 906 (1971), the plaintiff sustained a variety of personal injuries including permanent damage to his wrist. At the time of the accident, the plaintiff was employed as a factory worker for General Motors, although the specifics of his duties were apparently not disclosed at trial. In considering his claim for loss of earning capacity, the Ohio court analogized to claims for future pain and suffering:

> The general rule appears to be that if the injury is of an objective nature (such as the loss of an arm, leg, or other member) the jury may draw their conclusions as to future pain and suffering from that fact alone (the permanency of such injury being obvious); whereas there must be expert evidence as to future pain and suffering or permanency where the injury is subjective in character.

*Id.* at 119, 272 N.E.2d at 911–12 (quoting *Day v. Gulley*, 175 Ohio St. 83, 86, 191 N.E.2d 732, 734 (1963)). The court continued, holding that "if the injury is such that by its

nature, impairment of earning capacity must necessarily follow, additional evidence would be unnecessary to establish such impairment. We are of the view, however, that the evidence of injury in this case [where a general factory worker suffers permanent injury to his wrist] is not of that nature." *Powell,* 27 Ohio App.2d at 122, 272 N.E.2d at 913. In certain circumstances, therefore, the plaintiff's burden in establishing a reduction of earning capacity requires more than showing the nature of the injury and the general nature of the plaintiff's occupation; rather, there must be specific evidence showing that the injury will prevent the plaintiff from engaging in a particular type of work.[1] *Cf.*

1. Proof of a loss or impairment of earning capacity has been described as follows:

> The extent of future harm to the earning capacity of the injured person is measured by the difference, viewed as of the time of trial, between the value of the plaintiff's services as they will be in view of the harm and as they would have been had there been no harm. This difference is the resultant derived from reducing to present value the anticipated losses of earnings during the expected working period that the plaintiff would have had during the remainder of his prospective life, but for the defendant's act. (On the determination of the prospective length of life, see Comment *e*). Accordingly, the trier of fact must ascertain, as nearly as can be done in advance, the difference between the earnings that the plaintiff probably would or could have received during his life expectancy but for the harm and the earnings that he will probably be able to receive during the period of his life expectancy as now determined. *In this computation, there are considered the type of work that the plaintiff has done and the type of work that, in view of his physical condition, education, experience and age, he would have been doing and will be likely to do in the future during the working period of his life, together with all other matters reasonably relevant.*

Restatement (Second) of Torts § 924 comment d (1979) (emphasis added). Thus, in showing reduction of earning capacity, the plaintiff may attempt to prove an impairment of his ability to perform the requirements of an occupation in which he has been employed and/or an occupation in which he likely would have been employed, but for the accident. *Compare Pratt v. Stein,* 298 Pa.Super. 92, 444 A.2d 674 (1982) (loss of earning capacity based on plaintiff's prior employment as truck driver) *with Hall v. George,* 403 Pa. 563, 170 A.2d 367 (1961) (lost earning capacity of 18 year old student based on evidence of his ambitions to be a school teacher). *See also Lewis v. Pruitt,* 337 Pa.Super. 419, 487 A.2d 16 (1985) (where plaintiff had not been regularly employed as beautician for 16 years prior to the accident, but had maintained her license and skills as a beautician, practiced her trade on a casual, part-time basis, and engaged in

*Janson v. Hughes*, 309 Pa.Super. 399, 455 A.2d 670 (1982) (requirement satisfied by evidence from plaintiff's experts that plaintiff's injury would preclude his engaging in work involving heavy lifting).

In the case at bar, the appellant presented testimony regarding the nature and permanency of her bladder condition. That evidence disclosed that Ms. Serhan must monitor her daily intake of fluids and that she must take Urecholine four times daily, a drug designed to stimulate the bladder for urination. She also stated that at the time of trial she felt soreness in her neck and back and pain in her right arm and leg. One of her experts, Dr. Groblewski, testified that "she [appellant] has a chronic back injury, which is going to last her, and then she has a bladder dysfunction."

With respect to her business, the appellant offered only a general description of her occupational duties. She testified that she consults with clients in their homes concerning decorating ideas (she was the "chief salesperson") and only that she owns several "machines for the ocnstruction of the draperies and slipcovers."[2] Appellant failed to articulate, beyond what has been stated, any of the physical demands of her work from which the fact-finder could infer an impairment of capabilities in light of her injuries. Moreover, appellant failed to introduce any direct evidence in the form of either her own testimony or that of an expert, that her ability to perform her occupational chores was in any way curtailed by her injuries or would be hindered in the future.[3] Absent some proof, either direct or by reasonable

discussions pointing toward a return to that occupation, question of impairment of earning capacity was properly submitted to the jury); *Gottlob v. Hillegas*, 195 Pa.Super. 453, 171 A.2d 868 (1961) (issue of reduced earning capacity properly excluded where plaintiff offered no evidence that she had ever been gainfully employed or that she would be employed in the future).

2. With respect to appellant's prior employment at Bergman's Department Store, she stated simply: "At Bergman's I was responsible for the custom drapery department and getting to many, many customers as an interior decorating consultant with draperies, heavy clientele."

3. Additionally, while appellant testified that certain of her social activities were restricted as a result of the accident, she did not

inference, that the appellant's physical condition affected her ability to produce an income, Ms. Serhan failed to sustain her burden of proof, thereby removing from the case any issue of reduced earning capacity.[4] Accordingly, any evidence of her earnings to show such loss was properly excluded by the trial judge within the just exercise of his discretion.

Additionally, even if the evidence was sufficient to support a finding of loss of earning capacity, the tax returns for 1977–1981 proferred by the appellant would nevertheless have remained inadmissible. Inasmuch as the appellant was operating her sole proprietorship during those years, the tax returns would indicate the profits or losses of the business.

The pertinent rules are that profits realized from a business with invested capital or which employs the labor and skill of several individuals may not be shown to establish loss of the owner's earning power. This is the general rule: *James v. Ferguson*, 1960, 401 Pa. 92, 162 A.2d 690; *Bell v. Yellow Cab Co.*, supra, 399 Pa. 332, 160 A.2d 437; *Dempsey v. City of Scranton*, 1919, 264 Pa. 495, 107 A. 877; *Baxter v. Philadelphia and Reading Railway Co.*, 1919, 264 Pa. 467, 107 A. 881, 9 A.L.R. 504. The reason, of course, is that profits are generally speculative, may come from sources other than the owner, and are usually dependent on other factors, such as the condition of the market, the value of labor, the availability of credit, and the like. In such cases the measure of loss of earning power is the value of the owner's services in the business.

On the other hand there are exceptional cases of small, personal businesses where little capital or labor is needed

suggest that she had intended or was prepared to enter into a profession or occupation in which she would have been similarly restricted. *See* note 2 *supra*.

4. I do note, however, as did the court in *Massman v. City of Philadelphia*, 430 Pa. 99, 241 A.2d 921 (1968), that the appellant's injuries and the inconvenience they may cause are not to be disregarded. Rather, those factors ought to have been taken into consideration by the jury in determining appellant's pain and suffering.

and where in consequence the profits are the direct result of the owner's labor and so are the best available measure of his earning power: see cases cited just above. *Sherin v. Dushac,* 404 Pa. 496, 172 A.2d 577, 578 (1961).

I do not believe that the record supports a finding that the appellant falls into the latter category of "exceptional cases." On the contrary, the evidence presented at trial revealed as the *en banc* lower court noted:

> Plaintiff's business utilizes nine machines; an improved workshop; "paraphenalia" related to a "drapery, slipcover upholstering" business; "quite a lot of things to handle, samples, a very, very immense amount of displays;" and a large work area "for all the machinery and equipment...." Likewise Plaintiff stated she must "sublet" her work when she "cannot fulfill" her obligations.

Lower court op. at 3.[5] Accordingly, it appears that the appellant's business is one which is "invested with capital or which employs the labor and skill of several individuals." *Sherin, supra.* The profits of this business, as reflected on Ms. Serhan's tax returns, therefore could not be shown to establish loss of earning power.[6] Hence, the trial court properly refused to admit that evidence.

*Requested Jury Instructions*

The second issue raised by the appellant is whether the trial court erred in refusing to charge the jury on loss of

**5.** Ms. Serhan also explained on cross-examination:

> There's a system in the drapery business where you arrange to have work sewn, like slipcovers, installation work. In the business, I can't do everything myself that I'm not equipped to do. I have a person who does installation of drapery rods, I have another person who does the slipcover sewing....

N.T. at 225.

**6.** *Cf. DeFulvio v. Holst,* 272 Pa.Super. 221, 414 A.2d 1087 (1979). In *DeFulvio,* the plaintiff was engaged as a partner in a commercial refrigerator and air conditioning repair business. The business employed no workers other than the two partners and it required little capital investment. Accordingly, that court concluded that the case was within the exception to the general rule and evidence of the partnership's earnings was admissible to show the plaintiff's impaired earning capacity.

past earnings and reduction of earning power, as requested by the appellant. (Again, however, this court does not have the benefit of reviewing the specific charges proposed by the appellant in the trial court.) As detailed above, (1) the appellant failed to offer sufficient evidence to raise an issue of lost past wages and (2) the appellant failed to offer sufficient evidence to raise the question of diminished earning capacity. The trial court therefore properly refused to instruct the jury on these claims for damages.

For the foregoing reasons, I would find that the appellant is not entitled to a new trial.